No. 24-40779

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MATTHEW JOHN THEILER; SUSAN L. HERTZBERG;
DAVID WELDON KRAUS; THOMAS GRAY HARDAWAY
*Defendants-Appellants.*

On Appeal from the United States District Court for the Eastern District of Texas in No. 6:22-CR-3, Hon. Jeremy D. Kernodle, U.S. District Judge

## BRIEF OF DEFENDANT-APPELLANT DAVID WELDON KRAUS

JEFFREY J. ANSLEY
ARIANNA G. GOODMAN
KATHERINE M. DEVLIN
VEDDER | PRICE, PC
300 Crescent Court, Suite 400
Dallas, Texas 75201
Tel.: 469.895.4790
jansley@vedderprice.com

*Counsel for Defendant-Appellant David Weldon Kraus*

# CERTIFICATE OF INTERESTED PERSONS

**No. 24-40779, United States v. Theiler, *et al.***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellee **United States of America.**

2. Defendants-Appellants **Matthew John Theiler; Susan L. Hertzberg; David Weldon Kraus; Thomas G. Hardaway.**

3. The following law firms and counsel have participated in the case:

| **Plaintiff-Appellee** | **Counsel** |
|---|---|
| United States of America | Terri Hagan<br>Bradley Visosky<br>Nathaniel C. Kummerfeld<br>Adrian Garcia<br>Robert Wells<br>Lucas Machicek<br>United States Attorney's Office<br>Eastern District of Texas<br>101 East Park Boulevard, Suite 500<br>Plano, Texas 75704 |

| **Defendants-Appellants** | **Counsel** |
|---|---|
| Matthew John Theiler | Daniel Geyser<br>Haynes & Boone, LLP<br>2801 N. Harwood Street, Suite 2300<br>Dallas, Texas 75201 |

| | |
|---|---|
| | Jason Cassel<br>Cassel Law Firm, PC<br>204 N. Fredonia<br>Longview, Texas 75601 |
| Susan L. Hertzberg | Matthew Hellman<br>David Bitkower<br>Emanuel Powell<br>Keisha Stanford<br>J.E. Shreve Ariail<br>Jenner & Block, LLP<br>1099 New York Avenue NW, Suite 900<br>Washington, DC 20001 |
| | Jack Wesley Hill<br>J. Wesley Hill, PC<br>5380 Old Bullard Rd., Ste. 600 – PMB 180<br>Tyler, Texas 75703 |
| David Kraus | Jeffrey J. Ansley<br>Arianna G. Goodman<br>Katherine M. Devlin<br>Vedder \| Price, PC<br>300 Crescent Court, Suite 400<br>Dallas, Texas 75201 |
| Thomas G. Hardaway | Gene R. Benson<br>Elisha Kobre<br>Sheppard Mullin Richter & Hampton, L.L.P.<br>2200 Ross Ave., 20th Floor<br>Dallas TX 75201 |

*/s/ Jeff Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
VEDDER | PRICE, PC
300 Crescent Court, Suite 400
Dallas, Texas 75201
Tel.: 469.895.4790
jansley@vedderprice.com

*Counsel for Defendant-Appellant*
*David Weldon Kraus*

June 12, 2025

# REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rules of Appellate Procedure 34(a) and (f) and Fifth Circuit Rule 28.2.3, Defendant-Appellant David Weldon Kraus respectfully requests oral argument. This case involves a lengthy record and complex issues concerning the treatment of notes received from the jury while deliberating and, specifically, whether the timing and content of disclosures made to the parties regarding those notes constitutes reversible error. Oral argument would substantially aid this Court in its resolution of the case.

# TABLE OF CONTENTS

**Contents** **Page(s)**


CERTIFICATE OF INTERESTED PERSONS ........ i

REQUEST FOR ORAL ARGUMENT ........ iv

TABLE OF AUTHORITIES ........ vii

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 2

I. Trial And Jury Deliberations ........ 2

II. Note 1 Is Lost ........ 4

III. A Juror Makes an Undisclosed Request to Speak to the Court, but Does Not Receive a Response (Note 2) ........ 5

IV. The Parties are Informed of a Substantive Jury Note and of the Earlier Note Identifying the Foreperson (Notes 1 and 3) ........ 6

V. The Jury Delivers an Undisclosed Note that a Juror Will "Hang this Jury" a Day Before Convicting All Defendants (Notes 4 and 5) ........ 7

SUMMARY OF THE ARGUMENT ........ 9

STANDARD OF REVIEW ........ 9

ARGUMENT ........ 10

I. The District Court Deprived Mr. Kraus of his Right to be Present and to Have Counsel Present at Every Significant Stage of his Criminal Proceeding ........10

II. The District Court gave the jury an Erroneous *Allen* Charge ........18

CONCLUSION ........23

CERTIFICATE OF SERVICE ........25

CERTIFICATE OF COMPLIANCE ........26

# TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*Jenkins v. United States*,
380 U.S. 445 (1965) (per curiam)....................10, 22

*Lowenfield v. Phelps*,
484 U.S. 231 (1988)....................10

*Rogers v. United States*,
422 U.S. 35 (1975)....................11, 15

*Shields v. United States*,
273 U.S. 583 (1927)....................12

*Smalls v. Batista*,
6 F. Supp. 2d 211 (S.D.N.Y. 1998), *aff'd*, 191 F.3d 272
(2d Cir. 1999)....................22

*United States v. Barragan–Devis*,
133 F.3d 1287 (9th Cir. 1998)....................11

*United States v. Bass*,
490 F.2d 846 (5th Cir. 1974), overruled on other grounds by
*United States v. Lyons*, 731 F.2d 243 (5th Cir. 1984) (en banc)....................21

*United States v. Bieganowski*,
313 F.3d 264 (5th Cir. 2002)....................11, 18

*United States v. Boyd*,
773 F.3d 637 (5th Cir. 2014)....................18

*United States v. Davis*,
609 F.3d 663 (5th Cir. 2010)....................11, 12, 14, 17

*United States v. Hillsman*,
480 F.3d 333 (5th Cir. 2007)....................18

*United States v. Kyle*,
734 F.3d 956 (9th Cir. 2013)....................11

*United States v. Martinez*,
850 F.3d 1097 (9th Cir. 2017)....................9, 16

*United States v. Mejia*,
356 F.3d 470 (2d Cir. 2004) ........................................................................*passim*

*United States v. Parent*,
954 F.2d 23 (1st Cir. 1992)..........................................................................16

*United States v. Ronder*,
639 F.2d 931 (2d Cir. 1981) ................................................................ 14-15, 18

*United States v. Ruggiero*,
928 F.2d 1289 (2d Cir. 1991) ........................................................................10

*United States v. Stevens*,
38 F.3d 167 (5th Cir. 1994) ..........................................................................13

*United States v. Sylvester*,
143 F.3d 923 (5th Cir. 1998) ..........................................................11, 12, 14, 16

**Statutes**

18 U.S.C. § 3231 ..............................................................................................1

28 U.S.C. § 1291 ..............................................................................................1

**Other Authorities**

Sixth Amendment .........................................................................9, 16, 23

FED. R. APP. P. 4(b)(1) ......................................................................................1

Federal Rule of Criminal Procedure 43 .........................................................9, 11, 16

Fifth Circuit Pattern *Allen* Instruction (Criminal Cases) § 1.53 (2019). .................20

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 18 U.S.C. § 3231. The District Court entered judgment on December 6, 2024. ROA.16181-88.[1] Mr. Kraus filed a notice of appeal on December 10, 2024. ROA.16189-90; *see* FED. R. APP. P. 4(b)(1). This Court has jurisdiction under 28 U.S.C. § 1291.

[1] Cites to the trial court record on appeal are referred to in this brief as "ROA," followed by the corresponding pages of record below.

## STATEMENT OF THE ISSUES

Mr. Kraus' appeal presents two issues:

1. Whether the District Court deprived Mr. Kraus of his right to be present and to have counsel present at every significant stage of his criminal proceeding when it failed to inform Mr. Kraus of its receipt of Jury Note No. 4 in time to participate in responding to it and failed to inform him of its specific content before taking the jury's verdicts?

2. Whether the District Court abused its discretion, and erred, by giving an incomplete *Allen* charge in response to Jury Note No. 3 and in not responding to Jury Note 4?

## STATEMENT OF THE CASE

### I. TRIAL AND JURY DELIBERATIONS

On January 13, 2022, Mr. Kraus and 18 others were charged in a one-count indictment with conspiracy to violate the federal Anti-Kickback Statute in connection with the referral of patients for laboratory testing at two Texas hospitals. ROA.53-124. The District Court called five defendants for trial starting October 16, 2023. Deliberations began November 28, 2023, and the jury returned guilty verdicts against all defendants on November 30, 2023. ROA.2188-89.

During three days of deliberations, the jury sent five notes to the District Court. ROA.15665-69. The court notified Mr. Kraus and his codefendants of three

of them before their convictions. ROA.13668,13674. The undisclosed jury notes, discovered by the defendants after their convictions, included a note conveying a juror's dual declarations that he would "hang this jury" and that his "moral compass" would not permit his continued deliberations. ROA.15668.

While assembled and waiting for the jury to return its verdicts, the District Court informed the parties that it had received this note (but not of its specific content) and that it had not "directly" responded to it. ROA.13674. The timeline of relevant events concerning the jury notes is as follows:

| Jury Note | Time of Note | Timing of Disclosure to Parties | Content of Note Disclosed to Parties |
|---|---|---|---|
| 1 | Unknown | November 29, 2023, at 11:34 a.m.[2] | November 29, 2023, at 11:34 a.m.[3] |
| 2 | November 28, 2023, at 2:00 p.m.[4] | December 1, 2023, at 2:48 p.m.[5] | December 1, 2023, at 2:48 p.m.[6] |
| 3 | November 29, 2023, at 10:55 a.m.[7] | November 29, 2023, at 11:34 a.m.[8] | November 29, 2023 at 11:34 a.m.[9] |

[2] ROA.13668.
[3] ROA.13668.
[4] ROA.15665.
[5] ROA.15848.
[6] ROA.15848.
[7] ROA.15666.
[8] ROA.13668.
[9] ROA.13668.

| | | | |
|---|---|---|---|
| 4 | November 29, 2023, at 11:30 a.m.[10] | November 30, 2023, at 11:22 a.m.[11] | December 1, 2023, at 2:48 p.m.[12] |
| 5 | November 30, 2023 at 11:00 a.m.[13] | December 1, 2023, at 2:48 p.m.[14] | December 1, 2023, at 2:48 p.m.[15] |

## II. NOTE 1 IS LOST

On the first day of deliberations, the jury delivered Note 1 to the District Court. The parties learned of the note the next day when called to the courtroom to discuss a subsequent jury note, Note 3.[16] ROA.13668. At that time, the District Court informed them that, "we have received a note [Note 1] from the jury…that [] Juror No. 7, is the Foreperson." ROA.13668. The District Court did not disclose when it received Note 1. ROA.13674.

When defense counsel requested a copy of the note after trial and the jury's dismissal, the District Court's staff advised them that, "Jury Note Number 1 was a note identifying the foreperson. Unfortunately, when I went to retrieve the folder, the note was no longer in it and could not be located." ROA.15847. Accordingly,

[10] ROA.15668.
[11] ROA.13674.
[12] ROA.15848.
[13] ROA.15669.
[14] ROA.15848.
[15] ROA.15848.
[16] Note 2 is discussed below.

Mr. Kraus has not seen Note 1 and it is not part of the record for appeal. *See* ROA.15665-69.

## III. A JUROR MAKES AN UNDISCLOSED REQUEST TO SPEAK TO THE COURT, BUT DOES NOT RECEIVE A RESPONSE (NOTE 2)

After his conviction and the jury's dismissal, Mr. Kraus learned that the jury delivered another note, Note 2, during its first day of deliberations. ROA.15665. Note 2 conveyed a juror's request to meet with the District Court the next day, stating, "Juror #1 would like to talk with Judge Kernodle Wednesday morning." *Id*. The parties were not informed of this note when it was received or at any other time during deliberations. Instead, they learned of its existence when it appeared on the docket the day after their convictions. ROA.15758. The record is silent as to why this juror asked to speak with the District Court and what potential issues or questions led the juror to make this request.[17] Consequently, it is unclear what the juror inquired about and whether the District Court responded to the juror's inquiry.

[17] The trial record shows the following: (1) a juror asked to discuss something with the court shortly after beginning deliberations (ROA.15665); (2) there is nothing in the record indicating that the court met with or otherwise inquired into the reason for the request; (3) the court did not advise the parties of this request (and its decision not to respond) until after the verdicts; (4) the questions or issues that led to the request were not disclosed to the parties (ROA.13662,13668, 13674); and (5) that juror subsequently voted to convict the defendants. ROA.2189.

## IV. THE PARTIES ARE INFORMED OF A SUBSTANTIVE JURY NOTE AND OF THE EARLIER NOTE IDENTIFYING THE FOREPERSON (NOTES 1 AND 3)

On November 29, 2023, the courtroom deputy emailed all counsel regarding what it identified as Jury Note 2. ROA.15845. The email instructed counsel to return to the courtroom at 11:30 a.m. because the District Court had "received a Jury Note." *Id*. When the parties arrived, the District Court disclosed that it previously had received a note regarding selection of a jury foreperson, *i.e.,* Note 1. ROA.13668.

The District Court then read another jury note, identified as Note 2[18] and time-stamped 10:55 a.m. on November 29, 2023: "Juror No. 12 is unwilling to change his mind based on the evidence provided and the instructions you provided." ROA.15666. The District Court proposed responding to this note with what in effect would be an abbreviated *Allen* charge: "I refer you to the instructions already provided. I further instruct you to continue deliberating in good faith until you reach a unanimous decision. You may be as leisurely in your deliberations as the occasion may require and should take all the time you feel is necessary." ROA.15667. Based on the content of this note and what was known to the parties at the time, neither Mr. Kraus nor any other party objected to the proposed response. ROA.13668.[19]

---

[18] The parties learned after trial that this actually was Note 3. ROA.15666.

[19] The court did not advise the parties that its proposed response was to Note 3 rather than Note 2. ROA.15845. Mr. Kraus learned that this was Note 3 when the "Response to Jury Note 2" was entered on the docket, showing "2" in the caption struck through and revised to "3." ROA.15667.

At the time he agreed to the proposed response, Mr. Kraus did not know the jury had delivered an additional note to the District Court, discussed below, advising it that the same juror had, *inter alia,* claimed he would hang the jury and consequently cause a mistrial. If that information had been disclosed, it would have materially changed Mr. Kraus' analysis of Note 3 and his response to it. ROA.15668.

## V. THE JURY DELIVERS AN UNDISCLOSED NOTE THAT A JUROR WILL "HANG THIS JURY" A DAY BEFORE CONVICTING ALL DEFENDANTS (NOTES 4 AND 5)

On November 30, 2023, the jury delivered a note, Note 5, stating that it had reached verdicts on all defendants.[20] ROA.15669. Upon arriving in the courtroom but before the jury returned, the District Court informed the parties for the first time of its receipt of a "second note [Note 4] from the jury [while] in the process of responding to the first note." ROA.13674. The court did not read the content of Note 4 to the parties, which it charactered as "very similar to the first note regarding Juror No. 12 [Note 3]" and stated the court "did not directly respond to it." *Id*. The District Court then immediately called in the jury, foreclosing any discussion or questions concerning this note before taking the verdicts. *Id.* The jury convicted all defendants. ROA.2188-89.

[20] Note 5 is time-stamped 11:00 a.m. on November 30, 2023, and states that "the jury has reached a unanimous verdict for all defendants." ROA.15669.

On December 1, 2023, the District Court emailed counsel a copy of "juror notes and juror note replies that were filed under seal." ROA.15848. Mr. Kraus then learned that, thirty-five minutes after signing off on Note 3, the jury foreperson also delivered Note 4.[21] The specific content of this note, previously unknown to the parties, had advised the District Court the day before the defendants' convictions that a juror's moral convictions prevented him from continued deliberations and, effectively, that the jury was hung: "Juror #12 informed the jurors that his 'moral compass' would not allow him to be open minded. He also stated he would 'hang this jury.'" ROA.15668.

Note 4 is time-stamped November 29, 2023 at 11:30 a.m., thirty-five minutes after Note 3 and contemporaneous with the parties' assembly in the courtroom to discuss Note 3. ROA.15668, 13668. This is ***before*** the District Court offered the parties its proposed response to Note 3. ROA.15667, 13668. Moreover, the court was in possession of this note before it charged the jury with its supplemental response to Note 3. ROA.13674. Mr. Kraus did not learn that Note 4 existed until almost 24 hours after its receipt and immediately before the jury convicted him (ROA.13674), while he did not learn its actual content until a day after the jury convicted him and two days after its delivery to the court. ROA.15848.

[21] This note had been briefly described to the parties as sufficiently similar to Note 3 that it did not call for or receive a direct response. ROA.13674.

## SUMMARY OF THE ARGUMENT

The District Court erred in its handling of the jury notes. First, it deprived Mr. Kraus of his right to be present and to have counsel present at every significant stage of his criminal proceeding. This occurred when the District Court failed to inform Mr. Kraus and his counsel of (1) its receipt of Note No. 4 on a timely basis and (2) the specific content of the note. Second, the District Court erred when it gave an incomplete *Allen* charge to the jury by treating Note 4 as substantially the same as Note No. 3 and decided not to respond to it without advising the parties of its decision or of the note itself. This Court should reverse the District Court's judgment and remand for a new trial.

## STANDARD OF REVIEW

A federal appellate court reviews a defendant's Federal Rule of Criminal Procedure 43 and Sixth Amendment claims de novo. *United States v. Martinez*, 850 F.3d 1097, 1100 (9th Cir. 2017) (finding that the district court violated Rule 43 and defendant's Sixth Amendment right to counsel by failing to notify and consult with his counsel before the district court responded to the jury's note). The government will likely argue that plain error, rather than *de novo*, review applies because Mr. Kraus did not object to the District Court's actions in connection with Note 4. However, plain error does not apply where counsel does not have the opportunity to object. *Id.* at 1100, fn. 1.

The District Court's determination of whether to give an *Allen* charge is discretionary and should be reviewed for an abuse of discretion. *See Lowenfield v. Phelps*, 484 U.S. 231, 237-238 (1988). A trial court's charging decision is generally within its discretion, provided that it does not "coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts." *United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991) (citations omitted). In determining the legal issue of whether a jury has been coerced by the trial court, this Court must consider the supplemental charge, or response given by the trial court "in its context and under all the circumstances." *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam).

## ARGUMENT

### I. THE DISTRICT COURT DEPRIVED MR. KRAUS OF HIS RIGHT TO BE PRESENT AND TO HAVE COUNSEL PRESENT AT EVERY SIGNIFICANT STAGE OF HIS CRIMINAL PROCEEDING

Mr. Kraus did not object to the District Court's withholding of Note 4 for the simple reason that he did not know of its existence until immediately before the court took the verdicts. Moreover, Note 4 was not disclosed in a way that gave the parties the opportunity to object. The District Court announced its existence, its private conclusion on the previous day that the note was sufficiently similar to Note 3 to eliminate the need for a "direct[] respon[se]," then immediately took the verdicts. ROA.13674.

When the jury returned its verdicts and he learned of Note 4, it would have been futile for Mr. Kraus to object. "A failure to raise a futile objection does not waive the objection." *United States v. Kyle*, 734 F.3d 956, 962 n.3 (9th Cir. 2013); *cf. United States v. Barragan–Devis*, 133 F.3d 1287, 1289 (9th Cir. 1998) (reviewing de novo a claim similar to Mr. Kraus' where defense counsel did not learn about the jury note until after the verdict and did not object).

Federal Rule of Criminal Procedure 43 guarantees a defendant "the right to be present 'at every stage of the trial including . . . the return of the verdict.'" *Rogers v. United States*, 422 U.S. 35, 39 (1975) (quoting FED. R. CRIM. P. 43). "It is well-settled in this circuit that when a communication is received from the jury, counsel should be informed of its substance and afforded an opportunity to be heard before a supplemental charge is given." *United States v. Davis*, 609 F.3d 663, 676 (5th Cir. 2010); *see also United States v. Bieganowski*, 313 F.3d 264, 293 (5th Cir. 2002) (quoting *United States v. McDuffie*, 542 F.2d 236, 241 (5th Cir. 1976)) (Federal Rule of Criminal Procedure 43 "requires that '[w]hen a communication is received from the jury, counsel should be informed of its substance and afforded an opportunity to be heard before a supplemental charge is given.'").

A district court errs when it fails to notify counsel of a jury note before providing a supplemental instruction. *United States v. Sylvester*, 143 F.3d 923, 928 (5th Cir. 1998); *see also Rogers*, 422 U.S. at 39 ("Cases interpreting [Rule 43] make

it clear…that the jury's message should have been answered in open court and that ***petitioner's counsel should have been given an opportunity to be heard before the trial judge responded***.") (emphasis added); *Shields v. United States*, 273 U.S. 583, 588 (1927) (Where a jury asks for supplemental instructions, any guidance must be given either "in the presence of counsel or after notice and an opportunity to be present."). "The purpose of this procedure is to enable counsel to make informed decisions concerning whether to object or propose additional instructions." *Sylvester*, 143 F.3d at 928. In this Circuit, "[g]ranting counsel the opportunity to object only after the supplemental instruction has been delivered is too little, too late." *Id*. (citing *McDuffie*, 542 F.2d at 241).

Whether this failure to notify constitutes reversible or merely harmless error generally depends on the facts of the case. *Davis*, 609 F.3d at 676. If the trial court is "distinctly responsive to the question, it clearly stated the law, and no prejudice is shown, the error is harmless." *Sylvester*, 143 F.3d at 928 (quoting *United States v. Breedlove*, 576 F.2d 57, 60 (5th Cir. 1978)). Additionally, this Circuit reviews an error to "determine whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Davis*, 609 F.3d at 676 (quoting *United States v. Hall*, 152 F.3d 381, 406 (5th Cir. 1998)).

The District Court improperly withheld Jury Note 4, resulting in substantial prejudice that impacted the verdict, when it denied Mr. Kraus and his counsel the

opportunity to be heard and to make informed decisions concerning how to respond to Note 4 and, further, when it determined not to respond directly to this jury note at all.[22] Just thirty-five minutes after receiving Note 3, the jury notified the court of the juror's refusal to continue deliberating with the other jurors. Specifically, Note 4 stated, "Juror #12 informed the jurors that his 'moral compass' would not allow him to be open minded. He also stated he would 'hang this jury.'" ROA.15668.

Immediately before reading the verdict, the District Court told the parties that it had unilaterally decided—without timely advising them that an additional note had been received in the first place—just not to respond to Note 4. ROA.13674. This note, however, clearly indicated that a mistrial may be warranted and that a full *Allen* charge was appropriate, and even contained the express threat of a hung jury. ROA.15668.[23]

In doing so, the District Court deprived Mr. Kraus of material information concerning the jury's deliberations that he was entitled to receive on a timely basis.

---

[22] *See United States v. Stevens*, 38 F.3d 167, 169-70 (5th Cir. 1994) ("When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's task is to clear that confusion away with 'concrete accuracy.'"). Here, the District Court erred by not reasonably resolving the confusion depicted in Jury Note 4 with "concrete accuracy" as the District Court voluntarily acknowledged that it "did not directly respond to it." *See* ROA.13674.

[23] These notes were not "very similar." Note 3 stated that Juror No. 12 was unwilling to change his mind based on the existing instructions (ROA.15666); Note 4 declared he would cause a mistrial and was rife with textbook language calling for an *Allen* charge, *i.e.,* that his moral compass prevented his continued deliberations with jurors with whom he clearly disagreed on the verdicts. ROA.15668.

*See Sylvester*, 143 F.3d at 928 (holding that "the district court erred by failing to notify counsel before issuing the supplemental instruction"); *see also Davis*, 609 F.3d at 676 (holding that the trial court erred when it responded to a jury note without notifying the defendant); *United States v. Mejia*, 356 F.3d 470, 477 (2d Cir. 2004) (holding the court erred when it responded to a jury's message concerning deadlock without consulting with the parties). As in *Sylvester*, "[u]pon receiving the note from the jury, the court should have notified counsel of the message, shared its contents, and granted each side the opportunity to be heard." 143 F.3d at 928. The District Court did none of that, and that was clearly erroneous.

Further, the District Court's then-undisclosed decision not to respond to Note 4 fails the harmless error test, in that the court failed to provide a distinctly responsive instruction to the jury clearly stating the law. This closely resembles two Second Circuit holdings, both reversing criminal convictions where the defendants and their counsel were denied the opportunity to advocate for an *Allen* charge. *See Mejia*, 356 F.3d at 476-78 (vacating a conviction and remanding because an "ex parte response was inappropriate, substantially erroneous and prejudicial" where "the District Court failed to respond to the message of deadlock, choosing only to advise that the division of the jury should not have been reported") and *United States v. Ronder*, 639 F.2d 931, 935 (2d Cir. 1981) (internal citation omitted) (vacating a

conviction and remanding because the court could not "say 'with fair assurance' that the procedural error in the handling of the jury's inquiries did not affect the verdict").

In *Mejia*, the court did not respond to a note concerning jury deadlock, declined to give an *Allen* charge, and failed to consult with the defendant before responding to the note concerning deadlock. 356 F.3d at 473. The Second Circuit held this to be reversible error:

> ***[T]he District Court failed to respond to the message of deadlock***, choosing only to advise that the division of the jury should not have been reported. ***The jury was thus deprived of necessary guidance, and counsel was deprived of the opportunity to insist on an Allen charge at that point in the deliberations***. The standard governing further deliberation simply was not provided. By its failure to respond to the report of deadlock, the court in effect directed the jury to continue deliberations, which may have "induced unanimity," *Rogers*, 422 U.S. at 40, 95 S. Ct. 2091, for a guilty verdict.

*Id*. at 477 (emphasis added).

The reversible error in *Mejia* is identical to the error here. First, the jury was deprived of necessary guidance that was clearly called for based on the content of Note 4. The note informed the District Court that a juror was prepared to hang the jury and effectively had stopped deliberating. ROA.15668. Indeed, it went on to describe the juror's unwillingness to continue deliberations in terms that plainly called for an *Allen* charge's admonishment for that juror to maintain his conscientiously-held beliefs. *Id.* Like in *Mejia*, the court committed reversible error

when it failed to respond to this note with the plainly necessary guidance. *Mejia*, 356 F.3d 476-78.

Second, Mr. Kraus was deprived of his right to counsel at a critical stage in the proceeding when he was not informed of Note 4's existence on a timely basis, specifically, in time to participate in determining how the court would respond, and not informed of the note's content until after his conviction. Had he been aware of Note 4's statement of a juror's intent to hang the jury, Mr. Kraus would have immediately moved for a mistrial and, alternatively, for the jury to be given a complete Fifth Circuit Pattern *Allen* charge. Withholding the critical and material information in this note prevented Mr. Kraus from advocating for these reasonable responses, as he did not know there was such a need. *See, e.g., Martinez*, 850 F.3d at 1109 ("We hold that the court erred by responding to the jury note without consulting counsel, in violation of Rule 43(a) and the Sixth Amendment."); *United States v. Parent*, 954 F.2d 23, 25-26 (1st Cir. 1992) (Where a critical exchange between a court and the jury takes place without the parties' knowledge, "the real harm is…that the aggrieved party will have lost the value of the chance: the opportunity to convince the judge that some other or different response would be more appropriate, the circumstances considered.").

The common law is reasonably developed where the trial court provides some supplemental instruction to the jury without informing counsel of its instruction. *See*

*id.; see also Sylvester*, 143 F.3d at 928 (holding that "the district court erred by failing to notify counsel before issuing the supplemental instruction"); *see also Davis*, 609 F.3d at 676 (court erred when it responded to a jury note without notifying the defendant); *Mejia*, 356 F.3d at 477 (court erred when it responded to a jury's note concerning deadlock without consulting with the parties). However, there is a dearth of case law interpreting the nature of error when a trial court simply determines not to respond to a jury note at all. The relative absence of instructive guidance in the Fifth Circuit appellate case law, standing alone, is indicative that the error of this non-disclosure and non-response is indeed harmful—error of this kind simply rarely occurs.

Finally, the District Court's failure to respond to Note 4 likely "contribute[d] to the verdict obtained." *Davis*, 609 F.3d at 676. A note that went without a response announced a juror's intention both to "hang this jury" in favor of acquittals and that his conscientiously-held beliefs were at odds with those of his fellow jurors.[24] The next day, without the benefit of a full *Allen* charge or other appropriate instruction, that juror changed his vote, leading to the convictions of all defendants. Accordingly,

[24] The jury's subsequent convictions of all defendants after a brief additional period of deliberations means this juror's threat to hang the jury was a threat to prevent the returned convictions.

the failure to respond to this note plainly contributed to the verdicts, and is clear error that substantially harmed Mr. Kraus and deprived him of a fair trial.[25]

The District Court failed (1) to inform Mr. Kraus and his codefendants of the contents of this note for them to participate in deciding how to respond and (2) to respond to this note at all. These failures both left Juror No. 12 without the necessary support and direction that an *Allen* charge would have provided and deprived Mr. Kraus of the required opportunity to move for a mistrial, or, alternatively, for a proper *Allen* charge. Accordingly, the District Court's responses to various jury notes, or lack thereof, without advising Mr. Kraus and his counsel of the existence of such communications, was prejudicial error, and it is clear that the error contributed to his conviction.

---

[25] Failure to disclose Note 4's enhanced threat was not just a technical error, nor was this decision analogous to an administerial scheduling issue or trivial deviation from an agreed jury instruction. *See, e.g., United States v. Boyd*, 773 F.3d 637, 646-47 (5th Cir. 2014) (holding the defendant's substantial rights were not harmed where the court responded that the jury could stay past 6:00 p.m. to finish deliberations); *United States v. Hillsman*, 480 F.3d 333, 334-36 (5th Cir. 2007) (holding harmless error where the court, in conjunction with the prosecution and the defense attorneys, agreed to respond to a jury note with, "No, please refer to your jury instructions," but the court's note only said, "No. I am sorry."); *Bieganowski*, 313 F.3d at 293-94 (holding that the trial court did not issue a true supplemental instruction because "it simply resubmitted to the jury a portion of the original jury charge, an instruction to which [the defendant] had not previously objected"). Here, there cannot be a "fair assurance" that the failure to notify Mr. Kraus and his counsel of the vital information in Note 4 did not affect the verdict. *See Ronder*, 639 F.2d at 934-35 ("In sum, we cannot say 'with fair assurance' . . . that the procedural error in the handling of the jury's inquiries did not affect the verdict.").

## II. THE DISTRICT COURT GAVE THE JURY AN ERRONEOUS *ALLEN* CHARGE

The District Court's response to Jury Note 3, when viewed as it must be in conjunction with Note 4, constituted an erroneous *Allen* charge and reversible error. Jury Note 4, which the court received shortly after receiving Note 3 and before responding to it, revealed that a juror's "moral compass" prevented him from deliberating with an open mind and consequently that he would "hang this jury." ROA.15668. The only appropriate response at that time was to advise the parties of the note and its content, conduct a hearing to determine how to respond and allow the parties to make a record of their respective requests, and to either declare a mistrial or deliver a complete Fifth Circuit Pattern *Allen* charge. However, the court did not respond to Note 4, nor was Mr. Kraus informed of its content until after his conviction. ROA.13674, 15848. This denied him the opportunity to request an *Allen* charge, move for mistrial based on a hung jury, or both.

Instead, Mr. Kraus and his codefendants were informed of the District Court's indirect response ***only*** as it related to Jury Note 3, and only agreed to that response to the extent it concerned Jury Note 3. ROA.13668, 15667. The District Court's response, while not discussed in this context at the time, amounted to the delivery of a partial and coercive *Allen* charge to the jury and constituted an appropriate response to Note 3 and that note alone.

However, when looked at now in combination with Note 4 (as it was at the time by the court and jury but not by Mr. Kraus), it was a plainly improper, incomplete, and coercive response. The District Court, without advising the parties of the existence or content of Note 4, told the jury, "I refer you to the instructions already provided. I further instruct you to continue deliberating in good faith until you reach a unanimous decision. You may be as leisurely in your deliberations as the occasion may require and should take all the time you feel is necessary." ROA.15667.

Only the court and jury fully knew the messages from the jury at the time this response was proposed, agreed to, and given. Mr. Kraus knew nothing of the content, or even existence, of Note 4. If he had all the information he was entitled to, he would not have agreed to the response given to Note 3.

In sum, the jury received a partial *Allen* charge. However, the Pattern Jury Instructions expressly require that jurors receiving an *Allen* charge be instructed that they need not yield a "conscientious opinion":

> Remember at all times that no juror is expected to yield a conscientious opinion he or she may have as to the weight or effect of the evidence. But remember also that, after full deliberation and consideration of the evidence in the case, it is your duty to agree upon a verdict if you can do so without surrendering your conscientious opinion. You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of Not Guilty.

> You may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary.

Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.53 (2019).

At the time it was in possession of both Note 3 and Note 4, the District Court's response failed to instruct Juror No. 12 that he was entitled to adhere to his own conscientious opinion (or "moral compass"), even if it resulted in a mistrial.[26] However, this Circuit requires *Allen* charges to "make[] plain to the jury that each member of the jury has a duty conscientiously to adhere to his own honest opinion. . . ." *See United States v. Bass*, 490 F.2d 846, 855 (5th Cir. 1974), overruled on other grounds by *United States v. Lyons*, 731 F.2d 243, 246 (5th Cir. 1984) (en banc).

The instruction delivered by the District Court did not do that. Instead, it advised this juror that, despite his "moral compass" preventing him from being open minded to further deliberations, he was required to reach unanimous verdicts, however long it took. ROA.15667. The instruction said nothing about adherence to his conscientious opinion, the necessary other half of a proper *Allen* charge. This was an abuse of discretion and prejudiced Mr. Kraus. *See id*. at 855 (directing a jury to continue deliberations after a note states that a jury is hung "violate[s] the defendant's right to an uncoerced jury."); *see also Mejia*, 356 F.3d at 476 ("prejudice

[26] Instead, he was instructed to continue deliberating until he and his fellow jurors reached verdicts, in effect regardless of how long it took them: "…continue deliberating in good faith until you reach a unanimous decision. You may be as leisurely in your deliberations as the occasion may require…" ROA.15667.

. . . can result when a jury is told to keep deliberating, but given no guidelines as to the balance required in the deliberations.”).

Here, the District Court’s failure to give the Fifth Circuit Pattern Instruction, after being advised that a juror’s “moral compass” prevented him from properly deliberating and that he would “hang this jury[,]” constitutes an abuse of discretion. Viewing the District Court’s erroneous *Allen* charge “in its context and under all the circumstances,” it is clear that the District Court’s response created an impression that a hung verdict was unacceptable and that the juror should forego his moral compass. *Jenkins*, 380 U.S. at 446.

In *Smalls*, the district court determined that “a coercive *Allen* charge is … a ‘structural error’” which “requires automatic reversal of the conviction.” *Smalls v. Batista*, 6 F. Supp. 2d 211, 222-23 (S.D.N.Y. 1998), *aff’d*, 191 F.3d 272 (2d Cir. 1999). The district court explained that a coercive *Allen* charge was structural rather than harmless error because of its potential to have a “substantial and injurious effect or influence” in determining the jury’s verdict. *Id*. The Second Circuit, affirming the district court, agreed and reasoned that the trial judge’s “fail[ure] to balance [the *Allen*] charge with language that would remind the minority not to surrender their conscientiously held beliefs merely for the purpose of obtaining a unanimous verdict” likely had a “‘substantial and injurious effect of influence’ on the jury’s verdict.” *Smalls*, 191 F.3d at 282-83.

Here, as in *Smalls*, the District Court's "fatal flaw" was that it failed to include any "cautionary language which would discourage jurors from surrendering their own conscientiously held beliefs," *i.e.,* deliver a fulsome *Allen* charge. *Id.* at 279 (finding that the "charge was rendered coercive not so much for what it contained but for what it failed to contain"). Instead, the District Court merely advised the juror that he was required to reach unanimous verdicts and take whatever time was necessary to do so, despite his "moral compass" preventing him from being open minded for further deliberations and the District Court's own duty to notify him that he was entitled to adhere to his own conscientious opinion (or "moral compass"). The District Court's incomplete and erroneous *Allen* charge constitutes not only an abuse of discretion, but structural error as well. This Court should reverse the District Court's judgment and remand for a new trial.

## **CONCLUSION**

Mr. Kraus' conviction stands upon principles that deviate from the United States Constitution. The Sixth Amendment requires that the accused be convicted only through a unanimous verdict. But the verdict against Mr. Kraus and his codefendants was never truly unanimous. To the contrary, a single juror did not believe that they were guilty. His "moral compass" prohibited him from agreeing with his fellow jurors in voting to convict, and "he was unwilling to change his mind" based on the evidence and the District Court's instructions. So principled in

his belief of staying true to his "moral compass," the juror threatened to "hang this jury."

Despite this clear bid against unanimity, the juror was encouraged to return a guilty verdict through the unintended coercion of a partial *Allen* charge. The court did not respond to a ***critical*** note indicating that the juror's "moral compass" prohibited him from returning guilty verdicts. And when the court did respond, it instructed the juror simply to continue deliberating until finished without reminding him to maintain his conscientious opinion. After receiving the fatally incomplete charge, the juror chose to convict Mr. Kraus and his codefendants in direct contradiction to his "moral compass." Such a wrong must be righted.

For the aforementioned reasons, this Court should reverse the District Court's judgment and remand for a new trial.

Dated: June 12, 2025

Respectfully submitted:

By: */s/ Jeff Ansley*

Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
Texas State Bar No. 24094372
kdevlin@vedderprice.com
VEDDER | PRICE, PC
300 Crescent Court, Suite 400

Dallas, Texas 75201

*Counsel for Defendant-Appellant David Weldon Kraus*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2025, an electronic copy of the foregoing Brief was filed with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and will be served by the appellate CM/ECF system.

*/s/ Jeff Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
Texas State Bar No. 24094372
kdevlin@vedderprice.com
VEDDER | PRICE, PC
300 Crescent Court, Suite 400
Dallas, Texas 75201

*Counsel for Defendant-Appellant*
*David Weldon Kraus*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and Fifth CIR. R. 32.1: this document contains 7,079 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and Fifth CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word and produced in Times New Roman 14-point font.

*/s/ Jeff Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
Texas State Bar No. 24094372
kdevlin@vedderprice.com
VEDDER | PRICE, PC
300 Crescent Court, Suite 400
Dallas, Texas 75201

*Counsel for Defendant-Appellant*
*David Weldon Kraus*